**In re Mark W. WEISMAN, Debtor.**

**Mark W. WEISMAN, Plaintiff,**

**v.**

**EASTLAKE DEVELOPMENT CO. and Gary J. Gaertner, Esq., Trustee, Defendants.**

**Bankruptcy No. 89–00376E.
Adv. No. 89–0047.**

United States Bankruptcy Court,
W.D. Pennsylvania.

April 3, 1990.

---

Lawrence C. Bolla, Erie, Pa., for debtor.

Susan F. Reiter, Erie, Pa., for Eastlake Development Co.

Gary J. Gaertner, Pittsburgh, Pa., Trustee.

## OPINION

WARREN W. BENTZ, Bankruptcy Judge.

### Issue

The issue is whether a Chapter 13 debtor may recover, as a fraudulent conveyance under Bankruptcy Code § 548, the title to his residence which had been lost over five months prepetition through a fully consummated tax sale for an inadequate price where the only creditors are the oversecured first mortgagee and the adequately secured holder of a lien on debtor's automobile. We find no fraudulent conveyance.

Also at issue are the cross claims of bad faith. The debtor claims that the tax sale purchaser is in bad faith in opposing the Chapter 13 case; the tax sale purchaser claims the debtor is in bad faith in filing the Chapter 13 case and attempting to set aside the tax sale under these circumstances. We find neither party to be guilty of bad faith.

### Facts

Debtor owned his residence at 722 Plum Street, Erie, Pennsylvania, which his schedules list at a value of $10,000. Taxes were delinquent. Debtor had entered into a Stay of Sale Agreement with the Erie County Tax Claim Bureau. He failed to make the payments due thereunder and the Tax Claim Bureau proceeded with sale procedures, giving appropriate statutory notice. The Tax Claim Bureau sold the property on September 12, 1988 to Eastlake Development Co. ("Eastlake") for $3,389.75, being the amount of the delinquent taxes on the property. The property is subject to a pre-existing first mortgage with a balance of $4,450.

Debtor received a further statutory notice, giving him 30 days to file exceptions. None were filed and a deed from the Tax Claim Bureau to Eastlake was recorded on January 25, 1989. Thereafter, Eastlake brought, in the Court of Common Pleas, an Action to Quiet Title to obtain possession; judgment was obtained on March 28, 1989.

On April 11, 1989, debtor filed, in the Court of Common Pleas, a Petition to Open or Strike the judgment entered March 28, 1989. That petition was denied by the Common Pleas Court by order dated June 1, 1989. It is not contended that the tax sale or the state court proceedings were improper or not in compliance with state law.

The debtor filed the within Chapter 13 petition on July 7, 1989. Debtor asserts ownership of the residential premises at

722 Plum Street, asserting a value of $10,000 (subject to a first mortgage of $4,450) and claiming an exemption therein of $7,500. Debtor's schedules also show ownership of a 1988 Chevrolet Sprint of a value of $4,000, subject to a lien in favor of Landmark Savings Association in the amount of $5,300. The schedules also show household goods of $500, miscellaneous · wearing apparel and jewelry, etc. of $200, and cash on hand in a joint checking account with debtor's mother, who resides with him, of $150.

The schedules also indicate that the debtor's mother shares living expenses in the home, but does not pay compensation or rent to the debtor.

Also, the debtor paid his attorney $1,000 in fees for filing the within proceeding and $100 for costs.

The debtor did not file a plan, but there is no indication that the monthly payments due to Landmark Savings Association in the amount of $142.51 are not current. We presume those payments are current.

The debtor's complaint to void the transfer of the dwelling as a fraudulent conveyance asserts that "the fair market value of said real estate at the time of the sale did not exceed $20,000." That assertion is hopelessly vague; it no doubt results from the perennial failure of debtor's counsel to proofread his pleadings. In our view of the case, it does not matter whether the value is $10,000 as asserted in the schedules, or $20,000, as counsel apparently intended to allege in the complaint.

■ The essential element here is that there are no creditors affected by the alleged fraudulent transfer.

After Eastlake, in its brief, called attention to the lack of creditors, debtor filed on November 8, 1990 an amendment to his schedules, listing the $4,450 first mortgage, and four creditors on personal loans totaling $920. The bar date for filing claims expired November 16, 1990. No claims have been filed to date except the following:

Claim # 1 filed by the Chapter 13 Trustee for $1,000 due to the Erie County Tax Claim Bureau, as shown by the schedules; filed as a routine by the Chapter 13 Trustee. The Tax Claim Bureau was paid in full.

Claim # 2 filed by Landmark Savings Association for $5,526.22, secured by the debtor's 1988 Chevrolet Sprint.

Claim # 3 filed by Eastlake, contingent on the outcome of the within litigation.

Debtor's schedules assert by implication that Landmark Savings Association is undersecured by $1,300, by showing a $5,300 lien on a $4,000 automobile. However, there is no indication that the debtor is defaulting on the monthly payments. The debtor apparently has concluded for himself as a practical matter, that he should continue to pay the $142.51 per month on the automobile, and that decision reflects that the automobile is worth the full amount of the Landmark Savings Association lien thereon.

Thus, there are no creditors who were affected by the alleged fraudulent transfer.

Also, there is no showing of insolvency. We have the statement in debtor's schedules that he has $850 worth of unencumbered assets. In addition, he has paid, somehow, $1,100 to his attorney for bringing the within proceeding. Thus, we must conclude that this debtor was not insolvent at the time of the tax sale in question. Since the debtor was not insolvent, no creditors were hurt. In this case, the only creditor who could be hurt is Landmark Savings Association and its interest as secured by a lien on the automobile.

No creditor was harmed by the alleged fraudulent transfer, and the debtor was solvent after the transfer so that no creditor could be harmed thereby.

■ The fundamental purpose of the § 548 fraudulent conveyance statute was to protect creditors from transfers of assets of the debtor. As stated in the House and Senate Reports (Reform Act of 1978):

This section is derived in large part from section 67d of the Bankruptcy Act. It permits the trustee to avoid transfers by the debtor in fraud of his creditors. Its

history dates from the statute of 13 Eliz c 5 (1570).

The trustee may avoid fraudulent transfers or obligations if made with actual intent to hinder, delay, or defraud a past or future creditor.

Its purpose was not to protect the debtor. Under the scheme of the Bankruptcy Code, the debtor may assert rights on behalf of his creditors, but, especially in the case of an action to recover a fraudulent transfer, the person to be benefitted is not intended to be the debtor in the absence of a legitimate creditor.

While we sympathize with the debtor in his loss, we must conclude that the remedies for recovery of a fraudulent conveyance under § 548 are not available to him in these circumstances.

The debtor's adversary proceeding against Eastlake will, therefore, be dismissed.

Also, the debtor has requested sanctions against Eastlake for moving to dismiss the within Chapter 13 proceeding and for defending the claim of fraudulent transfer. Eastlake then claims that the debtor was not in good faith, in attempting to use Chapter 13 and a fraudulent transfer theory to recover the residence. We view all actions by counsel to be innovative lawyering and not abusive. Each attorney was using the available facts in attempting to utilize existing law for the benefit of his client. If there is to be criticism, the court would admonish both counsel that cries of abuse directed at opposing counsel should be reserved for those situations where the other's position is taken without real or apparent legal basis. In the instant case, there was a legitimate argument to be advanced on either side.

An order will be entered dismissing the adversary proceeding, and dismissing the cross claims for counsel fees and sanctions.

The Chapter 13 proceeding will be allowed to stand, but it would seem to have little purpose in the absence of a ruling favorable to the debtor on the avoidability of the tax sale and will probably be voluntarily dismissed.